## M. J. J. *v.* J. C. B.

Under our statute law regulating bastardy, a mother of an illegitimate child cannot, on her own account, and for the purpose of obtaining indemnity from the supposed father, institute her complaint after the birth of the child.

A justice of the peace for any county may properly try a bastardy complaint, where the complainant is a county pauper in such county, the interest of the magistrate in such cases being minute and remote.

BASTARDY complaint. The complaint before the magistrate alleges that the complainant "on the 21st day of May, 1865," at, &c., "was delivered of a male child, which is still living and is a bastard, and that said child was begotten on the 18th day of August, 1864," in, &c., by the respondent. The complaint was sworn to by the complainant, Nov. 14, 1865, and may be referred to. 

The respondent moves to dismiss upon the ground that it appears upon the face of the complaint, that the child had been born before the complaint was made.

The respondent also offered to show that the magistrate before whom the warrant was returned and the examination had, was a citizen and tax-payer of Plymouth in said county, and that the complainant at the time of the examination was a county pauper, that he seasonably before the magistrate moved to dismiss the complaint on this ground, because the magistrate was interested; and he offered evidence of these facts before the magistrate, but he overruled the motion; and the defendant now moves that the complaint be dismissed on this ground, and offers such evidence to the court. The defendant's motions upon these two points before the magistrate may be referred to.

It is ordered that the questions of law arising upon these two motions be reserved for determination by the whole court.

*J. Clark*, for complainant.

*A. F. Pike*, for respondent.

I.  At common law the father of a bastard child is under no legal obligation to support the child, and the mother has no legal claim on him for the support of her illegitimate child. Under it a bastard has no father. He is *filius nullius.* 1 Bac. Abr., Tit. Bastard, p. 511, (5 Eng. Ed. 1798;) Dyer 374, 6 Co. 77; Noy, 35. Nor has the father any right to the child. *Rex* v. *Soper,* 5 Turn. 278; *Rex* v. *Mosley,* 5 East. 224; *Hudson* v. *Hills,* 8 N. H. 417; *Wright* v. *Wright,* 2 Mass. 109; *Exparte Ann Knee,* 4 Bos. & Pul. 148; *The People* v. *Landt,* 2 Johns. 375.

All the remedy there is, or ever has been, to compel the putative father to maintain, or aid in the maintenance of his illegitimate offspring, or to indemnify the town against the support of such a child, is created and exists by statute.

In *Moncrief* v. *Ely,* 19 Wend. 406, the court say : "It cannot be a matter of doubt, that, anterior to the statute of 18 Eliz. and 6 Geo. II,

the putative father was under no legal liability to maintain his illegitimate offspring; and as that liability has been wholly created by statute, the remedy there prescribed to enforce the duty must be followed."

The father of an illegitimate child is not in the first instance bound to maintain it, unless compelled to do so by an order of the magistrates. *Cameron* v. *Baker*, 1 Car. & Payne 36; 12 E. C. L. R. 161.

"The putative father is under no obligation to maintain his illegitimate child, unless the steps are taken which the statute of Elizabeth requires." *Furillo* v. *Crowther*, 1 Dow. & Ry. 612; 16 E. C. L. R. 302; Reeves' Dem. Rels. 277; 2 Kent's Com. 215, (11 Ed. 231;) *Heskell* v. *Going*, 5 Esp. R. 131; also cited in 12 E. C. L. R. 162.

And under the English law, by the statute of 18 Elizabeth and 6 Geo. 2, the father was made chargeable, and suit brought by the *parish* to indemnify itself against loss arising from the expense incurred in maintaining the child. *Rex* v. *Barebaker*, 1 Salk. 121; 1 Bl. Com. 458; Com. Dig. 247, Bastardy; Bacon's Abr., Tit., Bastardy.

But the mother could not collect such a claim any more than she could one for fornication or adultery, and this was the condition of the English law until the 7 & 8 Vict. ch. 101, when at the suit of the mother, she might compel the father to pay her a certain sum per week until the child is thirteen years old. 2 Kent's Com. (11th Ed.) 231, note 6.

The liability, then, being established by statute, and only existing under its provisions, there can be no remedy except in strict compliance with the terms of the statute.

In *Fisher* v. *Shattuck*, 17 Pick. 252, 254, *Shaw, C. J.*, says, in speaking of bastardy proceedings in Massachusetts: "The proceedings in this statute are in some respects anomalous. *They are wholly founded upon statute, and they must therefore pursue the statute strictly, and be controlled and governed by its provisions.*" *Stiles* v. *Eastman*, 21 Pick. 132, 133; *Simons* v. *Ball*, 21 Ala. 501.

II. The proceedings in the case at bar are not according to the statute. Our statute does not authorize a woman to complain *after the birth* of the child, as we claim, and, unless there be such authority, these proceedings must fail.

An examination of the statute law existing at the time the complaint was made, shows that any *woman* pregnant with a child, which, when born alive, may be a bastard, or the *town* liable for its support, may complain. Comp. Stats. pp. 162, 163.

The complaint of the woman must always be *before* the birth of the child. That of the town may be *before* or *after*. The right conferred by the said law to hold any man to answer for the maintenance of his illegitimate child is embraced in the following statement:

1. Any *woman* may make complaint, under oath, in writing, charging any man with having begotten the child with which she is then pregnant, and which, if born alive, may be a bastard. Comp. Stats. 162, sec. 1.

2. If any woman shall abandon her complaint, *made as aforesaid*, the *town*, on application to the justice or court, may be admitted to

prosecute said complaint, in the same way as if the town had instituted it. Sec. 6.

3. If the mother of a bastard child neglect or refuse to make complaint, or, having made complaint, shall neglect to prosecute the same, or shall make a false complaint, the *town*, in the name of the town, may make complaint.

Now, the authority given to a woman to make complaint is limited to the time of her *pregnancy*, and before the birth of the child. Such are the plain terms and obvious meaning of the section giving the right to complain at all. It has always been the understanding of the profession that her right to complaint has been limited to this time, and the practice in the State has all been in accordance with that understanding.

There is no form, either in the Town Officer or Justice and Sheriff, for a complaint like the one in this case. They all contain the words "that she is now pregnant." Jus. & Sheriff, pp. 213, 215 ; Town Officer, p. 214, Ed. of 1843, and p. 32.

And in all the editions of the Town Officer it is stated that "the complaint, when made by a woman, must be sworn to *before the birth of the child*, but may be made by the town afterward. Ed. of 1843, p. 222 ; Ed. of 1859, p. 329.

All our statutes, from the earliest history of the State, have imposed this condition on the right of the woman to complain, *that it must be during pregnancy*.

The colonial statute, passed the 13th of W. III, Province Law, 1761, p. 13, provided that "he that is accused by any woman to be the father of a bastard child, begotten of her body, being examined on oath, and put upon the discovery of the truth in the time of her travail, by the midwife," * * and that any "justice of the peace, at his discretion, may bind to the next quarter sessions of the peace him that is charged, * * and if the woman *is not then delivered*," &c.

The act of July 11, 1791, Laws of 1805, p. 308, enacts : That when any woman shall be *pregnant* with a child, which, if *born alive*, may be a bastard, and such woman *shall, previous to her delivery, on oath, before a justice of the peace*, voluntarily charge any man with being the father thereof, &c. The aforesaid law remained in force until the law of June 28, 1827. Laws of 1830, p. 295.

The law of June, 1827, provides : "That every justice of the peace to whom complaint may be made *by any woman* PREGNANT *with a child*, which, if born alive, may be a bastard, against any man, charging him with having begotten such child, may convene such man before him," &c.

This law remained in force until the Revised Statutes, and was the original of the chapter on Bastardy, in those statutes, which is now in force.

It will be seen that by this examination of the Provincial Law of 13 W. III, and the statute of February 11, 1791, that the complaint must be made *before delivery*, and by the law of 1827, and since that, it must be made during *pregnancy*. No authority is anywhere given in any statute, during all this period, to a woman to make complaint after

the birth of the child, and her right to complain expires at the birth of the child.

It is claimed that the use of the word "mother," in the 7th section, gives countenance to the construction urged by the complainant, that the woman may complain after birth.   But, *first*, by this section, the woman has *no right* given her to complain, but the right is given the town to complain, after birth ; *second*, the words, "if the mother of a bastard child *neglect* or *refuse* to make complaint as aforesaid," are used instead of the words, as found in the statute of 1827, aforesaid, Laws of 1830, p. 296, sec. 6, "that when any mother of a bastard child *shall have neglected or refused* to make her complaint as aforesaid," during pregnancy ; and, *third,* it is just as correct to use the words, the mother of a bastard child, speaking of a woman before the birth of the child, as to use the words, "any woman pregnant with a *child,* before birth," which are found in the first section.

The law removing the disability of interest cannot have any other effect than to permit each party to give testimony.   The law was not intended to *change the proceedings* in any case, or in any way to alter the rights of parties, except to permit *interested parties to testify*.

It seems obvious that the statute regulating proceedings in bastardy requires the complaint of . the woman to be made during pregnancy, constancy in her accusation, and the declaration of the paternity of her child during travail, for another purpose than to permit her to be a witness.    Protection to the accused against the corrupt or unfounded accusation of a wicked woman is also the purpose of our law.    A construction giving her the right to complain after the birth, gives the complainant, who may be at a loss who was the father of the child, an opportunity to make her charge with more precision. than if she were obliged to complain before birth, which would give her an advantage never contemplated by the statute, and which no construction of the statute should ever give her.

The statute of this State is different, in the particular under consideration, from that of either Maine or Massachusetts, which we think favors the construction we contend for.   By the statute law of those States any woman "who is pregnant, or who has been delivered of a bastard child," may complain.   Mass. Laws (1789,) p. 212, sec. 2, passed March 15, 1786 ; Mass. Revised Statutes, (1836,) 383 ; Mass. General Statutes, (1860,) 404 ; Maine Revised Statutes, (1837,) 589.

In these States, it has been held that in proceedings of this kind the statute must be strictly followed.

*Keniston* v. *Rowe*, 16 Maine 38–40, *Shepley, J.*, in this case, says, p. 40 : "The statute in terms authorizes the prosecution to be commenced after the birth.   *   *   *   The process is one of a peculiar character, *existing only by statute*, and any attempt to class it with actions or suits at common law of any description, will afford little light."

Although the statute of Massachusetts, from early time, I think, has in terms authorized the woman to complain after birth, yet it has always been held under that statute that she must strictly comply with the terms of the law, and cannot be a witness without constancy of accusation,

and a declaration of paternity during travail. *Bailey* v. *Chesley*, 10 Cush. 284; *McManagill* v. *Ross*, 20 Pick. 99; *Drown* v. *Simpson*, 2 Mass. 441; *Commonwealth* v. *Cole*, 5 Mass. 517; *Maxwell* v. *Hardy*, 8 Pick. 561; *Bacon* v. *Harrington*, 5 Pick. 64.

III. As to the magistrate's being interested, the complainant being a county pauper, in the same county as that in which the magistrate resided, it has been held in *Warren* v. *Glynn*, 37 N. H. 340, *Ham* v. *Gilmanton*, 38 N. H. 118, *Hoit* v. *Cooper*, 41 N. H. 111, 115, that if this objection is seasonably made it will be good. In the present case it was so seasonably made. *Pearce* v. *Atwood*, 13 Mass. 324, 340, 341; *Hesketh* v. *Braddock*, 3 Burr. 1847.

NESMITH, J. Complaints of this nature are allowed and regulated by statute law. They are not recognized at common law, because the father of an illegitimate child is not liable for its support to the mother. 2 Kent's Com. 215; Comyn's Dig. Bastardy, 247. But here we have a statute which gives remedies to the mother, and sometimes to others, who may be interested. The more immediate object of these complaints is to give redress to a civil injury, by compelling the putative father to aid the mother in the support of the child, or to indemnify the town, chargeable with its support, against the expenses, which may be incurred thereby; giving to the court the power to require of the father, or the mother, or both, *security* against the liability. The proceedings under our statute assume the *form* of criminal prosecutions, but in practice they are treated substantially as civil suits. *Stokes* v. *Sanborn*, 45 N. H. 276. Hence, these proceedings are amendable, as writs and declarations are in civil cases. *Rice* v. *Chapin*, 10 Met. 6. In this case, the complaint originates from the mother of the child, and in her behalf, and not until after the delivery of her child, and, for this reason, the respondent says, it comes too late, and asks that the complaint be dismissed.

It becomes the duty of the court to give a fair and liberal construction to the statute, that gives authority for these proceedings, and such as will comport with its obvious intent and meaning.

The first section of chap. 68 of the Revised Statutes, p. 162, Comp. Laws, enacts, "That if any woman is *pregnant with a child*, which, if *born alive*, may be a bastard, she may make complaint in writing under oath to any justice of the peace, in this State, against any man, charging him with having begotten such child." Giving this language its true and popular import, it plainly implies, that the complaint made by the woman must be made during *pregnancy*, and before the birth of the child, and not afterwards. The act prescribes the duty of the justice, in issuing his warrant, &c., requiring a bond of the respondent, if found by him chargeable; then the entry of the case in court, and the mode of trial there. The 4th section of the act ordains, "That any woman, who shall have made *her complaint* in the *manner aforesaid*, charging any man with being the father of the child, and stating the time *when*, and the place *where*, the same was begotten, and shall have declared,

in the time of her travail, the same person to be the father of the child, to the persons attending her, if any person did attend her, and shall have continued constant in such accusation, shall be a competent witness on the trial of such complaint; her credibility being left to the court, or jury, who try the same," &c.   This section prescribes the terms upon which the woman can be made a witness. in her own behalf, when she shall have made her complaint in the manner aforesaid, or as prescribed in the first section of the act, and during her *pregnancy*.

The 5th section of this chapter prescribes the duty of the court in cases, where the respondent is found chargeable, as aforesaid, upon the mother's complaint.   The sentence and jurisdiction of the court are before suggested in this decision.

The 6th section of the act recites, "If any woman after having *made her complaint as aforesaid, shall abandon the same*, the town liable by law for the maintenance of the child, and for expenses incurred, may, upon application to the court or justice, made in writing by their selectmen, agent, or attorney, be admitted to prosecute said complaint.   And all subsequent proceedings thereon shall be the same, as if *said complaint* had been instituted originally by such town."   The complaint here adopted by the town, when abandoned by the woman, is the one originated by her during pregnancy, and before the birth of the child, being the same authorized by the first section of the act, and *none other*.

The language of the seventh section of said act is equally specific, plainly referring to the mother's neglect or refusal to make her complaint as aforesaid, or to any false complaint she may have made according to the requisition expressed in the first section of the act, as before explained.   All parts of the aforesaid act are entirely consistent with the construction, that the complaint intended to be made by the mother of the illegitimate child in her own behalf should be under oath, and prior to the delivery of the child.   And that towns, in certain cases, for the purposes of past security and future indemnity, may commence their prosecutions against the putative father afterwards.

Our statute relating to this subject has remained substantially the same since 1827.   The first section of the law of February, 1791, which was in force prior to 1827, provided, that, when any woman shall be pregnant with a child, which, if born alive, may be a bastard, and such woman shall, *previous to her delivery*, on oath, before a justice of the peace, voluntarily charge any man with being the father thereof, &c.

The time, when the woman shall make her complaint, as indicated by this law, is placed beyond a doubt.   It must have been *previous* to *her delivery*.   The Provincial Statutes of 1761, by fair intendment, contained a similar provision, and continued in force up to Feb. 11, 1791. Therefore, the statutes, which have been in force here for more than one hundred years, have been *in pari materia* in this respect; the complaint required of the woman, when prosecuting in her own right against the father of the illegitimate child, being required for about sixty years to be made *before the delivery of the child*, and for nearly as many other years *while she shall be pregnant of such child;* the terms employed, in all the statutes, having a like force and meaning.

The statutes of Maine and Massachusetts are different from ours. In those States, the woman may commence these proceedings either *before* or *after* the birth of the child. The *practice* under our statute has been uniform for a long series of years. We have not been able to find a single prosecution instituted and carried on by the woman against the putative father of her illegitimate child, in *her own behalf*, after the birth of the child. We think it has been the understanding of the profession, that such complaints would be too late, and could not be sustained. The most approved forms, or precedents, furnished by our books, are in unison with the aforesaid practice.

We think the statute limits the right of complaint, or the remedy of the woman in her own behalf, in point of time, to the period of gestation. The provision is a wise one regarding the interested parties. It is best, as a general rule, that the proposed remedy should promptly follow the injury received. The statute imposes the burthen upon the woman, presumed to have received her injury, to take immediate steps to procure remuneration from the author of her sufferings. Then, in case of her neglect or refusal to prosecute the offender, or when in the belief of others in interest, she has made a false charge, the law leaves to other parties the privilege to obtain their security. For these reasons, we think this prosecution cannot be maintained, and must be dismissed, as being out of time and irregular.

We are not called upon to consider the question, whether the county of Grafton may not now institute proceedings, through her commissioners, for their pecuniary protection. We do not undertake to decide this question. It is not reserved for our consideration. We think the objection to the magistrate's making an examination of this case, on account of his pecuniary interest in it, the complainant being a county pauper, ought not to prevail. His interest in the expenses of her support, as well as of this prosecution, must be regarded as too remote and minute to disqualify him, and no other magistrate. out of the county could be substituted, without incurring unreasonable delay and expense, provided no other legal objections existed against going out of the county for a justice, and to deny his authority to act in such a case might consequently leave the law unexecuted.

In *Moses* v. *Julian,* 45 N. H. 55, *Chief Justice Bell* examines this whole question of interest with ability. As a part of his decision in that case, he states the proposition, that the members of partnerships, and corporations, though their interest may be trifling, are, nevertheless, disqualified to sit as judges or jurors, except in cases where a party is a mere inhabitant of a public municipal corporation, as a *town* or *county,* entitled to receive the fines and costs imposed on offenders. In such cases, the members of such corporations are not disqualified either as judges or jurors. He collects the authorities in support of his position.

In the case of *Com. v. Emery,* 11 Cush. 411, the objection was to the police judge of Lowell taking jurisdiction, on account of the penalty in the case, accruing, upon conviction, to the *city* of *Lowell.* *Judge Shaw* remarked that the objection to the judge was obviated by a well settled rule founded as well on reason as authority : "That a mi-

nute, theoretic and remote interest, arising from a possible participation in penalties, either payable to the town, *county* or *State*, does not disqualify one from acting as judge, when *all* are so interested, who can act, and when the law would remain unexecuted without it."

*Chief Justice Shaw* gives an additional reason why a justice should act in this class of cases, remarking, that when jurisdiction was conferred on justices of courts, and magistrates, with a full knowledge on the part of the legislature, that a minute interest must exist in such justices and magistrates, it was intended by force of this statute to confer such jurisdiction, notwithstanding the existing interest. All judges are thus minutely interested in penalties, which enure to the commonwealth.

If such objection to them could be sustained, all such laws would remain unexecuted. *Com.* v. *Tuttle,* 12 Cush. 504; *Com.* v. *Barding,* 12 Cush. 507; *Com.* v. *McLane,* 4 Gray 427.

The cases quoted by defendant's counsel in our reports are prosecutions, where the magistrate, who presided in the trial of the case, resided in the interested town. Of course, the law of necessity would not apply to that class of cases, because it would be easy to obtain a disinterested magistrate from some town in the vicinity, not interested in the result.

Viewing the interest in the magistrate, who officiated here, as being slight, and that it could not well have been obviated, we overrule the exception taken to the jurisdiction of the magistrate.

Complaint dismissed on the first exception.